IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION
_____

SOUTHERN TRANSPORTATION, INC.
AND GEORGE ABRAHAM,

      PLAINTIFFS,

VS.                         NO. _____

LYFT, INC., UBER                  **JURY DEMANDED**
TECHNOLOGIES, INC.,
RASIER, LLC, AND
JOHNNY NEAL,

      DEFENDANTS.
_____

## COMPLAINT
_____

The Plaintiffs, Southern Transportation, Inc. and George Abraham, file this class action lawsuit against the Defendants, Lyft, Inc., Uber Technologies, Inc., Rasier, LLC, and Johnny Neal. The Plaintiffs would show to the Court as follows:

### PARTIES

1. The Plaintiff, Southern Transportation, Inc., is a Tennessee corporation with offices located at 581 South Second Street, Memphis, Tennessee.

2. George Abraham is an adult resident of Shelby County, Tennessee, and a licensed and permitted driver for Southern Transportation, Inc.

3. Lyft, Inc., is a Delaware corporation, with a principal place of business at 548 Market Street, #68514, San Francisco, California, licensed to operate and transact business in the State of Tennessee.   Lyft, Inc. may be served through their Registered Agent:

        Lyft, Inc.
        c/o Incorporating Services, LTD, Inc.
        992 Davidson Drive, Suite B
        Nashville, Tennessee  37205-1051

4.  Uber Technologies, Inc., is a Delaware corporation, with a principal place of business

at Fl 9, 706 Mission Street, San Francisco, California, licensed to operate and transact business in

the State of Tennessee.   Uber Technologies, Inc. may be served through their Registered Agent:

        Uber Technologies, Inc.
        c/o National Registered Agents, Inc.
        800 South Gay Street, Suite 2021
        Knoxville, Tennessee  37929-9710

5.  Rasier, LLC.  is a Delaware corporation, with a principal place of business

at Fl 4, 1455 Market Street, San Francisco, California, licensed to operate and transact business in

the State of Tennessee.   Uber Technologies, Inc. may be served through their Registered Agent:

        Rasier, LLC.
        c/o National Registered Agents, Inc.
        800 South Gay Street, Suite 2021
        Knoxville, Tennessee  37929-9710

6.  Johnny Neal, an adult resident of Shelby County, illegally operating as a driver for Lyft,

Inc.   Johnny Neal may be served as follows:

        Johnny Neal
        840 East Trigg
        Memphis, Tennessee  38106

## JURISDICTION AND VENUE

7.  The District Court has jurisdiction over this matter pursuant to 28 U.S.C §1332, since

there is diversity of citizenship between the parties and the amount in controversy exceeds

$75,000.00.  Additionally, this Court has Federal Question jurisdiction under 28 USC §1331

since this matter includes allegations related to Federal statutes.  This Court has jurisdiction

under 18 U.S.C. §1964.

8.   Venue is proper in the Western District of Tennessee based on 28 U.S.C. §1391(b)
because a substantial part of the events or omissions giving rise to the claims occurred in this
district.

## CLASS ACTION

9.   The Plaintiffs, Southern Transportation, Inc. and George Abraham, bring this action on
behalf of themselves and others similarly situated in Shelby County, Tennessee, all of which are
engaged in the taxi/transportation/limousine services provided in Shelby County, Tennessee.

10. The Plaintiffs have a personal right of action and are both proper parties to bring suit on
behalf of the class similarly situated in Shelby County, Tennessee, engaged in the
taxi/transportation/limousine services.

11. The class which the Plaintiffs represent are all lawfully engaged in the ongoing business
involving taxi services, limousine services, and all methods of transportation services provided to
third parties for which monetary compensation is exchanged.

12. Due to the numerous cab/limousine/transportation services in Shelby County and due to
the numerous persons employed by the cab/limousine/transportation services in Shelby County,
joinder of all members of the class is impracticable, and therefore, Plaintiffs have filed their class
action pursuant to Class Action Fairness Act (CAFA) 28 U.S.C. 1332.

13. As a result of the continuous unlawful actions by the Defendants, the questions of law and
fact are common to the entire class of Plaintiffs lawfully engaged in the taxi/
limousine/transportation industry in Shelby County, Tennessee.  The predominant questions
affecting individual class members include whether the Plaintiffs are suffering ongoing financial
harm by virtue of the Defendants' unlawful conduct in deliberately refusing to abide by the
recognized statutes and ordinances in effect in Memphis and Shelby County, Tennessee in regard

3

to the taxi service/limousine service/transportation services for hire available to all residents of Memphis and Shelby County.

14.  The claims of the Plaintiffs are typical and representative of the claims of the entire class, and therefore, the class action is proper.  The Plaintiffs would show that all members of the class are lawfully engaged in the taxi/limousine/transportation industry in Memphis and Shelby County, and lawfully abide by the regulations established by the State of Tennessee and the City of Memphis that are applicable to all persons engaged in commerce in Memphis and Shelby County in the taxi/limousine/transportation services that are provided by the representative Plaintiffs.    Plaintiffs have no interest antagonistic to those of the Class and Defendants have no defenses unique to the Plaintiffs.

15. The Plaintiffs will fairly and adequately protect the interests of the class, and will do so based upon their long-standing participation in the taxi/limousine/transportation service that have been part of the Memphis and Shelby County commerce for many years.  Plaintiffs have retained attorneys experienced in class and complex litigation.

16. The Plaintiffs would submit to the Court that should prosecution of separate actions by the individual members of the class be brought there would be a risk of inconsistent or varying adjudication with respect to individual members of the class, thereby establishing incompatible standards of conduct for the Defendants.

17.  A class action is superior to other available methods for the fair and efficient adjudications of this controversy for the following reasons:

(a) It is economically impractical for members of the Class to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for

individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

(b) The Class is readily ascertainable and definable; and

(c) Prosecution as a class action will eliminate the possibility of repetitious litigation.

## FACTS

18.  The Plaintiffs would also show to the Court the Defendants have been engaged unlawful in the taxi/limousine/transportation "for hire" industry since approximately April, 2014, and have consistently refused to abide by the codes, ordinances and regulations that have been enforced in Memphis and Shelby County since the Defendants have begun their unlawful operation.  Defendants are operating "for hire" yet are doing so without obtaining licenses, without paying license fees, without proper insurance, without charging regulated rates and without following other obligations imposed on "for hire" vehicle operators including, but not limited to, undergoing a physical examination  and criminal background check.  Based upon the Defendants' refusal to act in the manner applicable to the class, declaratory and/or injunctive relief is appropriate with respect to the class as a whole.

19. The Plaintiffs would show to the Court that since approximately April, 2014, that the Defendants have intentionally engaged in an ongoing pattern of conduct that is disruptive to the Plaintiffs' lawful participation in the commercial enterprise of taxi services, limousine services, and transportation for hire services that have been part of the Shelby County economy for many years.

20. The Plaintiffs would show to the Court that the Defendants have intentionally

operated their transportation services outside of the recognized codes, statutes, regulations and ordinances that have been established for the taxi service/limousine service/transportation service that are offered to customers in Memphis and Shelby County. The conduct of the Defendants have had a negative impact on the economic earning potential of the Plaintiffs due to the fact that the Plaintiffs abide by laws, ordinances, and regulations that are time-consuming and burdensome, and the Defendants refuse to abide by same. The Defendants are therefore gaining an unfair and economic advantage over the Plaintiffs and have been unjustly enriched by virtue of their refusal to comply with the ordinances/rules/regulations imposed by the Memphis City Council and the Memphis Transportation Commission that oversees the operation of taxi services/limousine services in the Memphis and Shelby County area.

21. The Plaintiffs would show that they are suffering ongoing financial harm by virtue of the Defendants' unlawful conduct in deliberately refusing to abide by the recognized statutes and ordinances in effect in Memphis and Shelby County in regard to the taxi service/limousine service/transportation services for hire available to all residents of Shelby County.

22. Despite the Defendants knowing requirements "for hire" operations, they have proceeded to intentionally and repeated defy the law. The Plaintiffs would ask the Court to award them damages as a result of the Defendants' unlawful conduct that has had a negative and adverse impact on the Plaintiffs' business enterprises that the Plaintiffs lawfully engage in and the Defendants unlawfully engage in.

23. The Plaintiffs ask the Court to award any injunctive or declaratory relief necessary to stop the Defendants from operating their business in an unlawful manner and from operating their business outside of the recognized statutes and ordinances in Shelby County, Tennessee, that address taxi service/limousine service/transportation for hire services.

24. The Plaintiffs ask the Court to award them damages, both compensatory and punitive, for the Defendants' deliberate and unlawful conduct.

25. The Plaintiffs ask the Court to award them attorney's fees and all expenses associated with the prosecution of this action.

## REGULATORY FRAMEWORK

26. Both the State of Tennessee (hereinafter referred to as "State") and the City of Memphis (hereinafter referred to as "City") have a statutory duty to regulate and control limousines, shuttles, taxicab and other vehicles for hire.

27. In exercising mandatory obligations to regulate taxicabs, the State and City have set forth numerous regulatory requirements. Both the State and City have important obligations and requirements for persons operating for hire vehicles which are essential to meeting transportation needs for such services as well as for the safety needs of the public.

**Tennessee Code Annotated 6-54-128. Criminal records of vehicle operators transporting the public -- Costs of investigation.**

 **(a)** In counties having a population in excess of one hundred thousand (100,000), according to the 2000 federal census or any subsequent federal census, it is hereby declared that access to criminal conviction histories by municipalities that choose to license and regulate persons operating vehicles for hire, or choose to employ persons to transport members of the public, and further choose to disqualify an applicant for a license or a permit, or refuse to hire a person because of a conviction for any specified criminal offense serves a law enforcement purpose. Municipalities that choose to license and regulate persons operating vehicles for hire**,** or choose to employ persons to transport members of the public, and further choose to disqualify an applicant for a license or a permit, or refuse to hire a person because of a conviction for any specified criminal offense shall require that all applicants for a license or permit to operate a vehicle for hire or employ persons to transport citizens submit a full set of fingerprints and undergo a criminal conviction records investigation through the political subdivision, the Tennessee bureau of investigation or the federal bureau of investigation in accordance with subsection (b).

**(b)** Upon receipt of an application, the municipality shall:

 **(1)** Conduct a criminal conviction record investigation through computer terminals or other means of access to criminal convictions maintained by the municipality, the Tennessee bureau of

investigation and the federal bureau of investigation; and

  (2) Forward the applicant's fingerprints to the Tennessee bureau of investigation, which shall verify the identity of the applicant and conduct a criminal conviction record investigation and forward the results of that investigation to the requesting entity.

(c) If no disqualifying record is identified at the political subdivision or state level, the Tennessee bureau of investigation shall forward the fingerprints to the federal bureau of investigation for verification of the applicant's identity and the federal bureau of investigation shall conduct a criminal conviction record investigation using the fingerprints.

(d) The results of criminal conviction record investigations shall be used for the limited purpose of determining the suitability of the applicant for issuance of the license or permit or the suitability of the person for employment with the municipality.

(e) Fingerprints shall be submitted on authorized fingerprint cards or by electronic, machine-readable data, or other suitable technological means.

(f) Any cost incurred in conducting such criminal conviction records investigations shall be paid by the governmental entity making the request. Governmental entities may include such cost as part of any fee charged for the processing of the applicant's license or permit.

**Tennessee Code Annotated 7-51-1003.  Scope of authority.**

  (a) Every municipality, or other governmental entity, is hereby expressly authorized and empowered to protect the public health, safety, and welfare by licensing, controlling, and regulating by ordinance or resolution each private passenger-for-hire vehicle providing transportation services operated within the jurisdiction of the municipality or other governmental entity.

(b) Every municipality or other governmental entity is empowered to regulate the following:

  (1) Entry into the business of providing passenger transportation service, including taxicab service, within the jurisdiction of that municipality or governmental entity;

  (2) The rates charged for the provision of such passenger transportation service;

  (3) The establishment of safety and insurance requirements even if they reduce the number of such private passenger vehicles for hire that otherwise would operate within the jurisdiction of the municipality or other governmental entity;

  (4) The establishment of stands to be employed by one (1) or a limited number of firms providing passenger transportation;

  (5) Limited or exclusive access by such passenger transportation service, including taxicab service, to airports or other facilities operated by or within the jurisdiction of the municipality or

other governmental entity;

   **(6)** The drivers of private passenger vehicles for hire**;**

   **(7)** The routes and stops of fixed route private passenger vehicles for hire**;** and

   **(8)** Any other requirement adopted to ensure safe and reliable passenger transportation service.

**Tennessee Code Annotated 55-4-112.  Registration fees for private and commercial motor vehicles operating for hire and transporting passengers -- Fees deemed additional to certain registration fees.**

  **(a)** The registration fees for private and commercial motor vehicles operating for hire who transport passengers shall be as follows:

   **(1)** Motor vehicles with not more than seven (7) seats for passengers ......................$ 37.13

   **(2)** Motor vehicles with over seven (7) seats and not more than fifteen (15) seats for passengers ......................$ 86.63

   **(3)** Motor vehicles with over fifteen (15) seats and not more than twenty-five (25) seats for passengers ......................$ 152.63

   **(4)** Motor vehicles with over twenty-five (25) seats and not more than thirty-five (35) seats for passengers ......................$ 235.12

   **(5)** Motor vehicles with over thirty-five (35) seats for  passengers ......................$ 317.63

**(b)** Where any route over which a private or commercial motor vehicle operating for hire is operated is exclusively within the limits of a municipality of the state, or where the route is partially within and partially without the limits of a municipality of the state, but does not extend more than fifteen (15) miles beyond the municipal limits, or where the route is wholly within the limits of a metropolitan government created under title 7, chapter 1, the fees shall be in addition to the registration fees set out in § 55-4-111 for passenger motor vehicles, fifty-five cents (55cent(s)) for each passenger seat, with a minimum fee of twenty-seven dollars and fifty cents ($27.50) for any single vehicle. The applicant must submit an affidavit confirming the route mileage and seating capacity of any vehicle registering under this provision.

**(c)** Personal buses that are not used in a trade or business shall be subject to the registration fee set out in § 55-4-111(a)(1), Class (B). All buses not subject to the registration fees set out in this section or in § 55-4-111 shall be subject to the registration fees set out in § 55-4-113(a)(2).

**Tennessee Code Annotated 7-51-1007.  Regulation of entry into the business of providing passenger transportation service -- Limousine, sedan, shuttle and taxicab service.**

  **(a)** In addition to exercising all the authority granted by all other provisions of this part, every governmental entity in any county having a population in excess of five hundred thousand (500,000), according to the 1990 federal census or any subsequent federal census, is empowered to regulate entry into the business of providing passenger transportation service, including, but not limited to, limousine, sedan, shuttle and taxicab service.

**(b)** As used in this section, unless the context otherwise requires:

  **(1)** "Limousine" means any motor vehicle except a taxicab or sedan designed or constructed to accommodate and transport passengers for hire**,** with an extended wheel base and expanded seating capacity designed for the transport of persons. The vehicle will have additional rear seating capacity, area, and comforts; and shall be designed to transport not more than fourteen (14) in number, exclusive of the chauffeur/driver, and the principal operation of which is confined to the area within the corporate limits of cities and suburban territory adjacent to the cities;

  **(2)** "Sedan" means any motor vehicle, except a limousine or taxicab, designed or constructed to accommodate and transport passengers for hire**,** that does not have an extended wheel base or an expanded seating capacity designed for the transport of persons. The vehicle will have no additional rear seating capacity, area or comforts; shall be designed to transport not more than five (5) passengers, exclusive of the chauffeur/driver, and the principal operation of which is confined to the area within the corporate limits of cities and suburban territory adjacent to the cities, and not operated on a fixed route or schedule;

  **(3)** "Shuttle" means any motor vehicle designed or constructed to accommodate and transport passengers for hire**,** not more than fifteen (15) in number, exclusive of the driver, and the principal operation of which is confined to the area within the corporate limits of cities and suburban territory adjacent to the cities, and operated on a fixed route or schedule;

  **(4)** "Taxicab" means any motor vehicle except a limousine or sedan designed or constructed to accommodate and transport passengers for hire**,** not more than nine (9) in number, exclusive of the driver, and the principal operation of which is confined to the area within the corporate limits of cities and suburban territory adjacent to the cities, and not operated on a fixed route or schedule.

**(c)** In any county to which this section applies, limousines, sedans, shuttles and taxicabs, as defined in this section, shall comply with the safety rules and regulations and the liability insurance requirements contained in title 65, chapter 15.

**Tennessee Code Annotated 65-15-101.  Purpose -- Participation in the unified carrier registration system.**

  (a) It is declared that the legislation contained in this part is enacted for the sole purpose of promoting and conserving the interest and convenience of the public by conferring upon the department of revenue and the department of safety the power and authority, and making it the duty of the department of revenue and the department of safety to supervise and regulate the transportation of persons and property by motor vehicle over or upon the public highways of this state, and to supervise and regulate certain businesses closely allied with such motor transportation, so as to:

  (1) Regulate, foster, promote and preserve proper and economically sound transportation and authorize and permit proper coordination of all transportation facilities;

  (2) Relieve existing and future undue burdens upon the highways arising by reason of their use by motor vehicles;

  (3) Protect the welfare and safety of the traveling and shipping public in their use of the highways, and in their contact with the agencies of motor transportation and allied occupations; and

  (4) Protect the property of the state and its highways from unreasonable, improper or excessive use.

(b) It is the intent of the general assembly that this state participate in the unified carrier registration system beginning with the date that it is established by the secretary of the United States department of transportation, in accordance with 49 U.S.C. § 13908. Pursuant to this intent, the commissioner of revenue is authorized to participate in the unified carrier registration plan and agreement established in accordance with 49 U.S.C. § 14504a, and to file on behalf of this state the plan required by 49 U.S.C. § 14504a(e).

(c) Notwithstanding any other law to the contrary, on and after the date on which the secretary of the United States department of transportation establishes the unified carrier registration system in accordance with 49 U.S.C. § 13908, no foreign or domestic motor carrier, motor private carrier, leasing company, broker or freight forwarder, as defined in title 49 of the United States Code, shall operate any motor vehicles on the highways of this state without first registering with a base state under the unified carrier registration system and paying all fees required under the federal Unified Carrier Registration Act of 2005, compiled generally throughout title 49 of the United States Code.

(d) Notwithstanding any other law to the contrary, on and after the date on which the secretary of the United States department of transportation establishes the unified carrier registration system in accordance with 49 U.S.C. § 13908, the commissioner of revenue shall follow rules governing the unified carrier registration agreement issued under the unified carrier registration plan by its board of directors. The commissioner shall follow rules and collect fee assessments set by the federal secretary of transportation from foreign and domestic motor carriers, motor private

carriers, leasing companies, brokers, and freight forwarders, and do all things necessary to enable this state to participate in the federal unified carrier registration agreement pursuant to the federal Unified Carrier Registration Act of 2005.

**Tennessee Code Annotated 65-15-110.  Liability insurance requirements.**

(a) No interstate or intrastate permit shall be issued by the department until such carrier shall have filed with the department, and the department shall have approved, a policy of liability insurance or bond and also, in the case of intrastate common carriers, a policy of cargo or passenger insurance in some reliable insurance company or association or other insurer satisfactory to the department and authorized to transact insurance business in this state, in such amount and such forms and upon such conditions as the department may deem necessary to adequately protect the interests of the public in the use of the public highway and with due regard to the number of persons and the amount of property to be transported, which liability or cargo insurance shall bind the obligors thereunder to make compensation for injury to persons, and loss of or damage to property resulting from the negligent operation by such motor carrier or contract hauler. No other or additional policies of insurance, bonds, or licenses than those prescribed herein shall be required of any motor carrier or contract hauler to which this chapter applies by any city, town or other subdivision of this state; provided, that this section shall not be so construed as to interfere with the right of any county, city or other civil subdivision of this state, to levy and collect any lawful tax to which such motor carrier or contract hauler is liable under the general revenue laws of this state within such county, state or other civil subdivision.

**City of Memphis Code Section 6-44-3**

No person shall operate or permit a passenger vehicle owned or controlled by him or her to transport persons for compensation upon the streets of the city without first having obtained a certificate of public convenience from the director of police services.

**City of Memphis Code Section 6-44-4 and Section 6-80-8**

A. Any person, partnership or corporation desiring to secure a certificate of public convenience and necessity shall make application to the permits office and pay the application fee of $200.00.  The notarized application shall be filed with and dated by the city police department.

B. The application for certificate shall be upon a form provided by the city police department.  An applicant for certificate, including any partner of the partnership application, and any officer or director of the corporate applicant and any stockholder holding more than five percent of the stock of a corporate applicant, or any other person who is interested directly in the ownership or operation of the business, shall furnish the following information:

1.     Name and address, including all aliases;

12

2.      Written proof that the individual is at least 21 years of age;

3.      All residential addresses of the applicant for the past five years;

4.      The trade name under which the applicant proposes to do business;

5.      The business, occupation or employment of the applicant for five years immediately preceding the date of the application;

6.      The financial status of the applicant, including the amounts of all unpaid judgments against the applicant or if a corporation, against any officer, director or shareholder as listed above or, if a partnership, any partner or limited partner, or any other person who is interested directly in the ownership or operation of the business;

7.      All criminal statutes, whether federal or state, or city ordinance violation for which conviction, forfeiture of bond or pleading of nolo contendere has occurred, except minor traffic violations;

8.      Fingerprints and two color portrait photographs at least two inches by two inches of the applicant;

9.      The address of the premises from which the vehicle for hire business is to be conducted and the address wherein the vehicles are to be stored and/or serviced;

10.     If the applicant is a corporation, the name of the corporation and the date and state of incorporation, the name and address of the registered agent, and the names and addresses of all shareholders, as required above, officers and directors of the corporation;

11.     The experience and/or the qualifications of the applicant to operate a transportation of passenger service;

12.     A showing that the public convenience and necessity requires the granting of the certificate;

13.     The number of vehicles to be put into service at the time of application, the location of proposed stands and terminals, and the class and seating capacity of each vehicle;

14.     The color scheme and insignia to be used to design the vehicle or vehicles of the applicant (black, gray, green, navy or white for limousines and sedans only);

15.     Whether applicant operates any other vehicles under this chapter;

16.     A statement by the applicant that he or she is familiar with the provisions of this chapter and is in compliance with them;

17.    A statement by applicant that he or she will be obligated to serve all sections of Memphis;

18.    A business plan.

C.   Within ten days, or a reasonable time thereafter of receiving the results of the investigation conducted by the division of police services, the director of police services shall fix a time and a place for a public hearing on the application and notice shall be given as provided in section 6-44-24(B). All documents relative to the public hearing shall be available for inspection prior to the hearing. Any interested person may file a statement in support of or in opposition to the issuance of a certificate and/or may offer testimony at the hearing.

D.   Failure or refusal of the applicant to give any information relevant to the investigation of the application or the applicant's refusal or failure to appear at any reasonable time and place for examination under oath regarding the application or the applicant's refusal to submit to or cooperate with any investigation required by this chapter, shall constitute an admission by the applicant that the applicant is ineligible for such license and shall be grounds for denial thereof by the director.

## City of Memphis Code Section 6-44-5 and Section 6-80-9

The director of police services may issue a certificate of public convenience and necessity if an applicant meets the following standards:

A.   The applicant's financial status shall be such that the applicant shall be capable of operating the vehicle or passenger vehicle for hire service during the time the certificate shall remain in effect.

B.   The applicant has demonstrated clear and convincing evidence that the public convenience and necessity requires the granting of a certificate. Among the factors to be considered are:

1.   The support of potential customers of the service;

2.   The uniqueness of the services offered, if possible;

3.   The service would not disrupt local traffic conditions.

C.   The applicant shall present a distinct color scheme (black, gray, green, navy or white for limousines and sedans only) and an insignia to designate the vehicle(s) of the applicant.

D.   If the applicant is an individual:

1.   The applicant shall be at least 21 years of age.

2.  The applicant shall not have outstanding unpaid final judgment.

3.  The applicant shall not have been convicted of, forfeited bond or pleaded nolo contendere to a felony or any crime involving moral turpitude as defined in T.C.A. § 57-4-203(h)(2), a controlled substance, prostitution, assignation, obscenity, or any crime of a sexual nature in any jurisdiction within five years immediately preceding the date of application.

4.  The applicant shall not have been found to have violated this chapter within five years immediately proceeding the date of application.

E.  If the applicant is a corporation:

1.  All officers and directors shall be at least 21 years of age.

2.  No officer, director or stockholder required to be named under section 6-44-4 shall have outstanding unpaid final judgments.

3.  No officer, director or stockholder required to be named under section 6-44-4 shall have been convicted of, forfeited bond or pleaded nolo contendere to a felony or any crime involving moral turpitude as defined in T.C.A. § 57-4-203(h)(2), a controlled substance, assignation, prostitution, obscenity, or any crime of sexual nature in any jurisdiction within five years immediately preceding the date of application.

4.  No officer, director or stockholder required to be named under section 6-44-4 shall have been found to have violated this chapter within five years immediately preceding the date of application.

F.  If the applicant is a partnership, joint venture or any other type of organization where two or more persons have a financial interest:

1.  All persons having a financial interest in the partnership, joint venture or other type of organization shall be at least 21 years of age.

2. The managing partner or manager shall have experience in the operation of a transportation business or in related endeavors.

3.  No person having a financial interest in the partnership, joint venture or other type of organization shall have outstanding unpaid final judgments.

4.  No person having a financial interest in the partnership, joint venture or other type of organization shall have been convicted of, forfeited bond or pleaded nolo contendere to a felony or any crime of moral turpitude as defined in T.C.A. § 57-4-203(h)(2), a controlled substance, prostitution, assignation, obscenity or any crime of a sexual nature in any jurisdiction, within five years immediately preceding the date of the application.

5.  No person having a financial interest in the partnership, joint venture or other type of organization shall have been found to have violated this chapter within five years immediately preceding the date of the application.

**City of Memphis Code Section 6-44-6 and Section 6-80-10**

A.  **No certificate of public convenience and necessity shall be issued unless the applicant provides to the city treasurer proof of financial responsibility by either a written policy of liability insurance coverage as provided in subsections (A)(1) or (A)(3) of this section, or a self-insurance certificate as provided in subsection (A)(2) of this section.** The liability insurance coverage limits as provided in subsections (A)(1) and (2) of this section are the same as that provided by the Tennessee Financial Responsibility Law of 1977, as amended T.C.A. § 55-12-101 et seq., generally and in particular sections 55-12-102 and 55-12-111, and shall be automatically increased as of January 1, 1990, as provided by said state statute, and thereafter as the statute is amended.

1.  **A written policy of liability insurance coverage issued by an insurance carrier duly authorized to do business in the state, covering separately, or in a schedule attached to such policy, each passenger vehicle for hire to be operated under the direction of such applicant, for vehicle for hire services shall be provided by a single-limit policy with a limit of not less than $50,000.00, applicable to one accident or split limit policy with a limit of not less than $20,000.00 for bodily injury to or death of one person, not less than $40,000.00 for bodily injury or death to two or more persons in any one accident, and not less than $10,000.00 for damage to property in any one accident.**

2.  A self-insurance certificate issued by the state commissioner of the department of safety, for which documentation from the commissioner should also be filed with the city treasurer.

3.  A written policy of liability insurance coverage issued by an insurance carrier duly authorized to do business in the state, covering separately or in a schedule attached to each policy, each passenger vehicle having a capacity of more than five persons including the driver, shall be provided by a policy with limits of at least $5,000.00 more per each seat capacity beyond five than the minimum single-limit or split-limit requirement for taxicabs, as provided herein, for injuries or death of more than one person in any one accident.

4.  a.  A self-insured retention or deductible funding, whether or not in conjunction with automobile liability insurance for vehicle for hire services which achieves the substantial equivalent of the liability insurance set forth in subsection A of this section. The applicant or certificate holder shall file a statement of compliance providing that the certificate holder or applicant shall pay within 30 days any final judgment of a court for damages on account of bodily injury, death or property damages resulting from the ownership or negligent use or operation of a vehicle for hire service subject to the single-limit liability

16

of subsection A of this section and shall deposit collateral for the faithful performance of such statement in a restricted account to insure the liability protection required in subsection A of this section as follows: $20,000.00 to be deposited immediately in a commercial bank or other such depository with a branch office located in the city, three deposits of $20,000.00 each, every 90 days thereafter, and then 12 deposits of $10,000.00 each, every 90 days thereafter until a total amount of $200,000.00 is deposited. Documentation of the deposits should be filed with the city treasurer. Within 30 days of any withdrawals, as provided for below, the fund shall be replenished to required funding level.

b.  The certificate holder or applicant shall file with the city treasurer and the depository, written authorization wherein the certificate holder or applicant shall expressly agree that, if any court, or the clerk thereof, shall certify to the city treasurer and to the depository that such certificate holder has failed to satisfy within 30 days any final judgment of the court upon which execution has been lawfully issued for damages in a single accident on account of bodily injury, death or property damage resulting from the ownership or negligent use or operation of any vehicle for hire service of such certificate holder, such cash or government obligations so deposited shall, to the extent of no more than $50,000.00, be applied by the depository upon the written order of the city treasurer, to the satisfaction of the judgment; and agreeing that, for that purpose, any government obligations so deposited may be sold and converted into cash by the depository at its market price, and that any cash excess from the proceeds of such sale shall remain with the depository as collateral security aforesaid. Nothing herein shall affect the right of the general public to recover damages in excess of the limits stated herein from a source other than the restricted fund. The certificate holder shall reimburse the fund for such judgment so that the fund shall be brought to the required level within 30 days of the withdrawal by the city treasurer. The certificate holder shall not encumber the fund nor shall the fund be encumbered or moneys withdrawn from the fund except as provided herein.

c. The certificate holder shall report claims activities on a quarterly basis to the city treasurer, including the following information per claim: the name(s) and addresses of the claimant(s), the date and location of the accident(s), the name(s) of the vehicle for hire service driver(s) involved, and the amount and current status of the claim. Records of the claims maintained by the certificate holder shall be made available for inspection by the city treasurer or his or her representative during regular business hours in the office of the certificate holder for a period of one year of the final disposition of each claim.

d. It is unlawful for a permit holder, or anyone acting on his or her behalf to commit or perform any of the following in handling of claims:

i.       Misrepresent insurance policy provisions relating to coverage at issue;

ii.      Fail to acknowledge and act reasonably and promptly, considering all the circumstances, upon written or oral communications with respect to claims;

iii.     Fail to adopt and implement reasonable standards for the prompt investigation

17

of claims.

e. So long as a depository has received no written notice of default by a certificate holder in the faithful performance of this statement of compliance referred to in subsection (A)(4)(a) of this section, such certificate holder shall be entitled to receive, and the depository shall pay to him or her, if, as and when collected by it, all interest from time to time accruing upon any cash or government obligations deposited as herein provided. All charges made by the depository for such account shall be paid by the certificate.

f.  In case a certificate holder, after making a deposit of cash or government obligations as provided in subsection (A)(4)(a) of this section shall discontinue the operation of vehicle for hire services or in the event he or she shall, with the consent of the city treasurer, substitute in lieu of such agreement a policy of liability insurance in accordance with subsection A of this section, the certificate holder shall continue to maintain the deposit at the required level for such period of time as shall be made by the city treasurer and the certificate holder of all outstanding and unpaid claims pending against such person; and a sufficient amount of such cash or government obligations so deposited shall be retained by the depository as, in the reasonable discretion of the city treasurer, shall be reasonably sufficient to guarantee payment of such claims. The balance of such deposit shall thereupon be returned to the person making such deposit by the depository, upon the order of the city treasurer; and thereafter the balance of such fund shall, from time to time as claims are reduced, be returned by the depository to the person making such deposit on the order of the city treasurer, in the proportion to the amount that it shall be shown to the city treasurer that such claims have been paid or satisfied, or have been reduced, dropped or abandoned. In case of dispute over such appraisal between the person making such deposit and the city treasurer, the dispute shall be settled by the chief administrative officer or his or her designee, and the decision of same shall be final and binding upon the parties.

g. Failure by the certificate holder to fully comply with all the provisions of subsection (A)(4) of this section shall result in the immediate suspension of the affected certificate of public convenience and necessity and notification of a revocation hearing.

B.  Any insurance policy issued pursuant to this section shall further provide that the insolvency or bankruptcy of the insured shall not relieve the company from the payment of damages for injuries or death sustained, or loss occasioned within the provisions of the policy and that the prepayment of any judgment that may be recovered against the insured upon any claim covered by such policy shall not be a condition precedent to any right of action against the company upon the policy, but that the company shall be bound to the extent of its liability under the policy and shall pay and satisfy such judgment, and that action may be maintained upon such judgment by the injured person or his or her heirs, or personal representatives, as the case may be, to enforce the liability of the company as therein set forth.

C.  Any insurance policy issued pursuant to this section shall further provide that the same may not be canceled or not renewed without at least 30 days written notice to be sent by

registered or certified mail, return receipt requested, to the city treasurer, except that cancellation for nonpayment of premium shall require no more than ten days, properly mailed, written notice of cancellation.

D.  If the certificate holder fails to fully and timely comply with all the provisions of subsection (A)(4) of this section, the certificate of public convenience and necessity affected by such fund shall fail within the period specified in such notice of cancellation or nonrenewal of a liability insurance policy or self-insurance certificate to provide a policy or self-insurance certificate meeting the requirements of this section on or before the date of cancellation or nonrenewal, then the certificate of public convenience and necessity affected by such cancellation or nonrenewal shall be immediately suspended. Any such suspended certificate of public convenience and necessity may be revoked after a public hearing to be held following ten days' written notice, sent registered or certified mail, return receipt requested, the date of post mark and the date of cancellation, nonrenewal, or the date the subsection (A)(4) of this section fund falls below the level provided for in subsection (A)(4)(a) of this section being day one, upon the finding that the policy or self-insurance certificate has not been provided or the subsection (A)(4) of this section fund has not been properly funded. The suspended certificate of public convenience and necessity may be reinstated by the city treasurer before the hearing or at the hearing, upon compliance in full with the provisions of this section, so long as no other cause for suspension or revocation exists. An application for a certificate of public convenience and necessity, after revocation, shall be treated as an initial application.

E.  No passenger vehicles for hire shall be operated upon the suspension or revocation of a certificate of public convenience and necessity.

## City of Memphis Code Section 6-44-9

All persons engaged in the vehicle for hire service business in the city operating under the provisions of this chapter shall render service to the public desiring to use passenger vehicles for hire. Holders of certificates of public convenience and necessity shall maintain a fixed place of business and a publicly known telephone number(s).

## City of Memphis Code Section 6-44-20 and Section 6-80-25

A.  Permits required by this article shall be applied for, in person and in writing, on such forms as the city treasurer may prescribe, which forms shall show that:

1.  T**he applicant has obtained a class D license with "For Hire" endorsement pursuant to the provisions of T.C.A. chapter 7, title 59;**
2.  All criminal statutes, whether federal or state, or city ordinance violations for which conviction, forfeiture of bond or pleading of nolo contendere has occurred, including motor vehicle and traffic violations;
3.  Such other information as the city treasurer may require.

19

B.  Such application shall be accompanied by two photographs as provided by the city permits office, one of which shall be attached to the permit, if issued, and one to be retained in the files of the city treasurer with the application for the permit.

C.  Such application shall also be accompanied by a Department of Safety, State of Tennessee motor vehicle report; a criminal record check issued by the city treasurer; a statement (form provided) by a reputable physician who is a resident of the city, indicating the length of time which the physician has treated the applicant, showing that the applicant is not disabled by reason of defect of sight, hearing, body or limb from safely operating a limousine and indicating any and all physical and mental conditions for which treatment has been rendered within the last year and for which treatment continues to be rendered; references of at least three reputable persons personally acquainted with the applicant; containing their name, address, home and work telephone numbers, and a statement from a holder of a certificate of public convenience and necessity indicating that the applicant shall be affiliated with the certificate holder upon the issuance of the permit.

D.  Driver's permits shall remain the property of the city treasurer and may be canceled, revoked or suspended at any time and will be surrendered on demand.

## City of Memphis Code Section 6-4-22 and Section 6-80-27

A.  Before issuing a driver's permit under this article, the city treasurer or the city treasurer's designee shall investigate the facts set out in the application and shall not grant such permit to any person who, in the opinion of the city treasurer, after investigation, is not physically or morally fit to drive or operate a limousine for hire in the city.

B.  No driver's permit shall be issued to any applicant who has been convicted of, forfeited bail or pleaded nolo contendere to a felony or any crime involving moral turpitude as defined in T.C.A. § 57-4-203(h)(2), a controlled substance, prostitution, assignation, obscenity or any crime of a sexual nature in any jurisdiction, or been an inmate of reform school or penitentiary as a result of a conviction for a felony, within five years prior to his or her application for such permit.

C.  The city treasurer may refuse to issue a driver's permit to any applicant whose police record shows conviction for public drunkenness, driving under the influence of intoxicants, repeated moving traffic violations, or any other good and just cause which, in the opinion of the city treasurer, would be inimical to the public health, safety or morals.

D.  No driver's permit shall be issued unless the applicant is at least 21 years of age.

E.  It shall be the duty of the city treasurer to issue a driver's permit to any applying therefor, showing compliance with the provisions of this chapter.

**City of Memphis Code Section 6-80-4**

The director of police services is authorized and directed to make and enforce such additional rules and regulations, not in conflict with the provisions of this chapter, as the director may deem proper to regulate the operation of passenger vehicles for hire under a certificate issued pursuant to this chapter, provided that no regulation shall be made or enforced in conflict with this chapter or any other city ordinance.

**City of Memphis Code Section 60-80-6**

The director of police services and/or his or her designees of the city are authorized and are instructed to monitor conduct of holders of certificates of public convenience and necessity and drivers operating under this chapter. Upon discovering violation of the provisions of this chapter, the designees shall take appropriate action. Any vehicle for hire may be inspected at the discretion of the director of police services and/or his or her designee at any time or location. Vehicles may be inspected for cosmetics, safety requirements, meter seals, and to include permits and licenses required to be held by the driver or any other inspection deemed necessary by the director of police services and/or his or her designee.

**City of Memphis Code Section 6-80-38**

    A.  No driver shall engage in selling alcoholic beverages or any controlled substance, or solicit business from any house of ill repute nor may any person known to be of ill repute use his or her vehicle for any purpose other than the transporting of passengers except as provided for driver trainees.

    B.  Drivers shall not engage in abusive language, including but not limited, to cursing, verbal insults or derogatory comments in the presence of passengers, potential or engaged, or staff members of regulating authorities.

    C.  While on duty, drivers shall not be under the influence nor engage in the consumption of intoxicants, including but not limited to beer and other alcoholic beverages or controlled substances. Any driver charged with driving while intoxicated may have his or her permit immediately suspended as provided in section 6-80-35

    D.  No driver shall participate in or be present during gaming activities.

    E.  Drivers must present an acceptable appearance, including clean, neat wearing apparel not in need of repair, no hats or other head dress except a brimmed chauffeur's cap or baseball cap with a brim of no more than four inches. No shirt may be worn open at the chest; all shirts must have a closable collar and shall bear no advertisement, symbol, fixture or saying other than company logo; no halter tops or tank shirts may be worn; no shorts may be worn; and shoes must be worn at all times while serving the public; general appearance must be one of neatness and cleanliness.

F.  All drivers must wear some form of identification of the company they represent. Examples include above chauffeur's/baseball cap, a company patch over the left breast pocket or shoulder, or jacket with company logo.

## City of Memphis Code Section 6-80-39

A.  Every driver holding a valid permit shall be subject to random drug screening as established in this section. This program shall require testing monthly of at least three percent taxi drivers, and three percent for carriage, and limousine and other drivers. Drivers shall be selected for drug and alcohol testing on a random basis, by using a scientifically valid random number generation method approved by the city. Upon selection, the permits office shall notify the certificate holder for whom the driver works. The certificate holder shall be responsible for notifying the driver. Once advised of the required test, a driver must take the test within 24 hours. The permits office will use testing locations already approved by the city.

B.  The cost of the testing shall be borne by the certificate holder if the results are negative. If the results are positive, the cost of the test shall be borne by the driver tested. The results of all tests shall be immediately provided to the permits office.

C.  Drivers will be subject to urine drug and breath alcohol testing. Drug testing will be for any illegal drug or substance including but not limited to amphetamines, cocaine or its derivatives, marijuana, opiates and phencyclidine (PCP). Illegal use includes use of any illegal drug, misuse of legally prescribed drugs, and use of illegally obtained prescription drugs. Breath alcohol testing will be considered positive at a 0.04 alcohol level or higher.

D.  The use of a controlled substance is not prohibited, which is prescribed by a treating medical physician, if this physician makes a good faith judgment that use of the substance by the driver at the prescribed dosage level is consistent with the safe performance of the driver's duties. Drivers using a controlled substance prescribed by a treating physician must immediately notify the certificate holder that they are taking such medication. The certificate holder may request a doctor's certificate verifying the treatment. Abuse of a prescribed controlled substance is prohibited.

E.  Any driver who refuses to comply with a request for testing, who provided false information in connection with a test, or who attempts to falsify tests results through tampering, contamination, adulteration or substitution shall have his or her permit revoked immediately. Refusal can include an inability to provide a specimen or breath sample without a valid medical examination, and a verbal declaration, obstructive behavior, or physical absence resulting in the inability to conduct the test.

F.  Any driver who tests positive under the random testing procedure will be subject to the following:

1.  Suspension of permit for one week;
2.  Referral to an assessment by a substance abuse professional (SAP);

22

3.  Return to work drug and alcohol tests at the end of the week;

4.  Completing a return to work agreement outlining terms of return to work, including ongoing treatment and additional random testing for up to five years with a minimum of six tests that first year.

G.  Any driver who has a second positive test under any testing circumstance within three years is subject to revocation.

H.  No driver who has had a permit revoked for failing drug screening shall be eligible for a permit for six months following revocation. At the end of that period, any re-application must include evidence that the driver has undergone treatment for substance abuse and proof of a negative drug screen within one week of the application reinstatement.

I.  A driver who fails a drug/alcohol test within three years of a first suspension shall have his or her permit revoked for two years. A third violation shall result in a permanent revocation.

J.  1.  Testing shall be done on all drivers subject to a fitness for work evaluation when there are reasons to believe that drug or alcohol use is adversely affecting job performance. The certificate holder and the permits office will make reasonable suspicion determinations.

2.  Testing shall be done on all drivers involved in an accident that results in a fatality or injuries requiring immediate transportation to a medical facility or the driver receives citation by local law enforcement officers, or if one or more vehicle incurs disabling damage that requires towing, pushing, etc., from the site and driver receives a citation for a moving violation arising from the accident.

3.  Following an accident, the driver will be tested as soon as possible, but not to exceed eight hours for alcohol testing and 32 hours for drug testing. Any driver involved in an accident must refrain from alcohol use for eight hours following the accident or until he or she undergoes a post accident alcohol test. Any employee who leaves the scene of the accident prior to the submission to the drug/alcohol test will be considered to have refused the test and subject to permit revocation.

K.  Confidentiality will be maintained throughout the drug/alcohol testing process. The permits office will maintain results in the strictest confidence in a medical file separate from the official personnel file. In cases where disciplinary action results from positive test, such information shall be shared only with those in a supervisory capacity involved in that action.

28.  Despite the numerous regulatory requirements placed on for hire vehicles,

Defendants began operating without the permission or authority of the City and State and in

complete disregard of the law.

23

29. Defendants began operations without complying with the permitting requirements of both the City and State and presumably without complying with most or all of the other regulatory requirements, including but not limited maintaining the required insurance and criminal background check of drivers, among others.

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP

30. Plaintiffs have a prospective/future business relationship with all Shelby County citizens desiring to hire cabs/limousines/transportation for hire vehicles.

31. The Defendants have specific knowledge of the Plaintiffs prospective relationships with future customers in Shelby County desiring cab/limousine/transportation for hire services.

32. The business relationship and/or the prospective business relationship between the Plaintiffs and the Shelby County citizens who utilize cab/limousine/transportation for hire services has been diminished by the Defendants' conduct.

33. The Defendants intentionally by improper motives, i.e. refusing to comply with the Memphis and Shelby County ordinances, and caused the relationship between Plaintiffs and the Shelby County residents to end and/or be diminished as a result of the unlawful and ongoing deliberate conduct.

## RICO (RACKETEER INFLUENCE AND CORRUPT ORGANIZATION ACT)

34. Defendants have engaged in a pattern of racketeering activity connected to the acquisition, establishment, conduct or control of their respective enterprises.  In furtherance of their pattern of racketeering activity, Defendants have taken multiple actions constituting wire fraud under 18 U.S.C. §1343, which amounts to or poses a threat to continued criminal activity.

35. Defendants wire fraud consists of their scheme or artifice to defraud or to obtain

24

money or property by means of false pretenses, representations, or promises; their use of the interstate wires for the purpose of executing the scheme; and a specific intent to defraud either by devising, participating in or abetting the scheme.

36. The actions of the Defendants constitute a conspiracy under RICO because the Defendants along with their drivers conspired to commit these RICO offenses and acted in furtherance thereof.

37. Under 18 U.S.C. §1964(c)  the Plaintiffs and all others similarly situation are entitled to recover threefold their damages plus costs and attorney fees from the Defendants.

## DAMAGES

38. The Plaintiffs, by virtue of being permit holders, pay license fees to the City and State, and a host of other regulatory and business costs and expenses.  By operating illegally and with non-permitted vehicles, the Defendants are skirting applicable regulations and paying ZERO dollars in permit fees to the City and State and ZERO dollars for other regulatory and business costs and expenses.  These illegal actions by the Defendants result in the realization of illicit profits to the detriment of the Plaintiffs, while at the same time depriving the Plaintiffs of profits they would otherwise obtain but for the actions of the Defendants.

39. Defendants' actions described herein are rendering the Plaintiffs' licenses and permits valueless.  If a for hire transportation service can be run without incurring expenses and without complying with government regulation, what possible benefit is obtained by those who do incur normal business expenses and comply with the laws?

40. By reason of the Defendants' actions alleged herein, Plaintiffs have suffered, and will continue to suffer, damages to their business, reputation, and good will and have lost sales and profits that Plaintiffs would have made but for Defendants' actions.

41. Plaintiffs request that this Honorable Court award damages to the Plaintiffs in an amount greater than (1) the Defendants' profits, (2) the amount of actual damages suffered by the Plaintiffs, (3) any higher amount as the Court may award at it's discretion.

42. Plaintiffs seek any and all damages due as a result of the Defendants violation of the Racketeer Influenced and Corrupt Organizations Act, specifically treble the amount of actual damages suffered by Plaintiffs pursuant to 18 U.S.C. §1964(c).

**REQUEST FOR TEMPORARY RESTRAINING ORDER**
**& PRELIMINARY INJUNCTION**

43. Plaintiffs seek injunctive relief pursuant to common law as well as by statute in 18 U.S.C. §1964(a).

44. Plaintiffs will continue to suffer irreparable injury and damages if Defendants are not immediately restrained from operating illegally.  Defendants have shown a complete disregard and refusal to comply with the Memphis and Shelby County ordinances and, as such, the illegal activities by the Defendants are likely to continue unless this Honorable Court issues a Temporary Restraining Order and Preliminary Injunction.  However, in cases where a violation of a statute is alleged, as in this case, a showing of irreparable injury is not required.  See *U.S. v Caribbean Ventures, Ltd.,* 387 F.Supp. 1256, 1257 (D.N.J. 1974) (citing C.*A.B. v Donaldson Line (Air Services) Limited*, 343 F.Supp. 1059 (S.D.N.Y. 1972); *C.A.B. v Modern Air Transport, Inc.*, 81 F.Supp. 803, 806 (S.D.N.Y. 1949), aff'd, 179 F.2d 622 (2d Cir. 1950).

45. In *Caribean Ventures*, the U.S. was seeking to enjoin the defendants from proving unlicensed air transportation for hire, even though they alleged their service was free.  The court found a reasonable probability of success in favor of the U.S. and granted the injunction because the defendant was violating FAA regulations which required any person engaged in air transportation to obtain the required operating certificate.  The court further found that the

26

"defendants fail to take into account the overriding public interest in the safe passage of air travelers…" and that the "defendants cannot be permitted to jeopardize the public interest which the regulations were reasonably designed to protect."

46. Just like in *Caribbean Ventures*, the Plaintiffs contend that there is a substantial likelihood that Plaintiffs will prevail on the merits of this matter and the threatened harm to the Plaintiffs and the overall safety of the community outweighs any harm that a Temporary Restraining Order and Preliminary Injunction would inflict on the Defendants because they have no reasonable expectation of protection from their own illegal activities and statutory violations.

47. The issuance of a Temporary Restraining Order and Preliminary Injunction would not adversely affect the public interest and the public policy because public interest must weigh in favor of the safe passage of travelers for which the regulations (that the Defendants are violating) were designed in the first place.

48. Plaintiffs ask this Honorable Court to set the request for a Temporary Restraining Order and Preliminary Injunction for hearing at the earliest possible time and, after the hearing, issue a preliminary injunction against the Defendants.

## REQUEST FOR PERMANENT INJUNCTION

49. Plaintiffs ask this Honorable Court to set their application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendants enjoining them forever from their illegal conduct.

## CONDITIONS PRECEDENT

50. All conditions precedent to Plaintiffs' claim for relief have been performed or have

occurred.

**WHEREFORE**, Plaintiff and the members of the Class, pray for relief as follows:

1.      Declare that the Defendants' transportation services violate recognized State statutes and City codes and ordinances.

2.      Certify this action as a class action on behalf of the proposed Plaintiffs and other members of the Class, and that the Plaintiff, George Abraham, be designated as the representative of the Class;

3.      Award compensatory damages for the Plaintiff and each Class member in the amount of Three Million ($3,000,000.00) Dollars.

4.      Award treble and additional damages;

5.      Award prejudgment and post judgment interest as provided by law;

6.      Award Attorneys' fees, expenses, and costs of this action; and

7.      For all such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Respectfully submitted,

**McNABB, BRAGORGOS & BURGESS, PLLC**


____/s/Nicholas E. Bragorgos_____
NICHOLAS E. BRAGORGOS (12000)
Attorney for Plaintiffs
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Telephone: (901) 624-0640
Fax: (901) 624-0650
nbragorgos@mbb-law.com

and

28

**DEAL, COOPER & HOLTON, PLLC**


_____/s/Paul Berry Cooper, III_____
Paul Berry Cooper, III (13196)
Deal, Cooper & Holton, PLLC
296 Washington Avenue
Memphis, Tennessee 38103
Telephone:  (901) 523-2222
Fax:  (901) 523-2232
bcooper@dchlaw.com